# United States Court of Appeals
## For the Eighth Circuit

_____

No. 20-2538
_____

WM Crittenden Operations, LLC, doing business as West Memphis Health and Rehab,

*Plaintiff - Appellant,*

v.

United Food and Commercial Workers, Local Union 1529, On behalf of
Jacqueline Brooks, Grievant,

*Defendant - Appellee.*
_____

Appeal from United States District Court
for the Eastern District of Arkansas - Northern
_____

Submitted: May 13, 2021
Filed: August 16, 2021
_____

Before COLLOTON, WOLLMAN, and KOBES, Circuit Judges.
_____

COLLOTON, Circuit Judge.

WM Crittenden Operations, LLC, sued in the district court to vacate an arbitration award. The award reinstated a member of United Food and Commercial Workers, Local Union 1529 to her former position after she was discharged by the company. The company argued that the arbitrator exceeded the scope of his

authority, and that the award violates public policy. The district court[1] disagreed and granted summary judgment for the Union. We affirm.

I.

WM Crittenden Operations, LLC, doing business as West Memphis Health and Rehab, is a long-term care nursing home facility. Jacqueline Brooks was employed by the company as a certified nursing assistant. United Food and Commercial Workers, Local Union 1529 is party to a collective bargaining agreement with WM Crittenden. Certified nursing assistants like Brooks are part of the bargaining unit represented by the Union.

The disputed termination of employment occurred in October 2017. Brooks was assigned to take a nursing home resident to a medical appointment. Brooks and the resident got into an argument about whether they would stop to purchase cigarettes while en route. After investigating the incident, WM Crittenden discharged Brooks for verbal abuse of a resident. The Union, on behalf of Brooks, protested her discharge. After WM Crittenden denied the Union's grievance, the Union appealed to arbitration in accordance with the collective bargaining agreement.

Article 17 of the collective bargaining agreement, entitled "Discipline and Discharge," provides that "[e]mployees may not be disciplined, suspended, or discharged except for just cause." Article 2 confers certain management rights on the company, including the "sole and exclusive rights" to "suspend, discharge or discipline employees for just cause," and to promulgate and enforce "reasonable rules and regulations governing the conduct and acts of employees during work hours." The agreement does not define "just cause."

---

[1]The Honorable Brian S. Miller, United States District Judge for the Eastern District of Arkansas.

Separate from the collective bargaining agreement, the company promulgated a Resident Abuse, Neglect, or Mistreatment Policy. This policy states that residents "shall be free from abuse," including "verbal abuse (derogatory terms)." The Abuse Policy provides that "[a]ny employee shall be subject to immediate termination" if an allegation of abuse is substantiated by the facility.

In the arbitration proceeding, the parties stipulated that the arbitrator should consider two issues: (1) Did WM Crittenden violate the collective bargaining agreement when it terminated Brooks? (2) If so, what is the proper remedy?

The arbitrator found that Brooks spoke to the resident in a "loud and intemperate voice" and "engaged in an unprofessional dialogue," but that she did not use "derogatory terms . . . as laid out in" the company's Abuse Policy. He determined that "[j]ust cause to discipline was present in this case," but concluded that "discharge from employment is too harsh given the totality of the facts."

The arbitrator ordered that Brooks be reinstated to her former position and that her discharge be reduced to a 120-day suspension without pay. He further ordered that Brooks be made whole with back pay for the period after her suspension to the date of her reinstatement, minus any income from other sources since the date of her discharge.

WM Crittenden filed this action in the district court, seeking to vacate the arbitrator's decision to reinstate Brooks. *See* 9 U.S.C. § 10. The court concluded that the arbitrator did not exceed his authority and granted summary judgment for the Union. We review the district court's decision *de novo*. *Trailmobile Trailer, LLC v. Int'l Union of Elec., Elec., Salaried, Mach. & Furniture Workers*, 223 F.3d 744, 746 (8th Cir. 2000).

II.

Courts play only a "limited role" in reviewing an arbitrator's decision, because the interpretation of a collective bargaining agreement is a matter for the arbitrator. *United Paperworkers Int'l Union v. Misco, Inc.*, 484 U.S. 29, 36 (1987). An arbitrator's award must "draw its essence from the contract and cannot simply reflect the arbitrator's own notions of industrial justice." *Id.* at 38. But "as long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority," even a "serious error" in construing the contract is insufficient reason to set aside the award. *Id.*

The collective bargaining agreement at issue here provides that "[e]mployees may not be disciplined, suspended, or discharged except for just cause." The arbitrator interpreted that provision to mean that "[t]o find just cause to discipline, the Company must demonstrate that the Grievant committed the acts and that the level of discipline imposed was appropriate." On these facts, the arbitrator concluded that "[j]ust cause to discipline was present," but that "discharge from employment is too harsh."

WM Crittenden argues that because the arbitrator determined that just cause to discipline was present, he exceeded his authority by modifying the company's decision that termination was the appropriate punishment. As the arbitrator saw it, however, there was no fixed meaning of "just cause" in the collective bargaining agreement. Rather, a different level of cause could be required before the company could take each adverse action—discipline, suspension, and discharge. The arbitrator determined that just cause to *discipline* was present, but just cause to *discharge* was not. The arbitrator was at least arguably construing the contract by interpreting the undefined "just cause" provision in the agreement and applying it to the facts of this case. *See Int'l Brotherhood of Elec. Workers, Loc. Union No. 53 v. Sho-Me Power Corp.*, 715 F.2d 1322, 1326 (8th Cir. 1983).

This case is unlike those where courts have vacated awards because the arbitrator fashioned a less severe remedy after deciding that an employee's conduct gave just cause for termination. *See N. States Power Co., Minn. v. Int'l Brotherhood of Elec. Workers, Loc. 160*, 711 F.3d 900, 902-03 (8th Cir. 2013); *St. Louis Theatrical Co. v. St. Louis Theatrical Brotherhood Loc. 6*, 715 F.2d 405, 408-09 (8th Cir. 1983). The arbitrator here never found that there was just cause for a termination; he found only that there was just cause to impose discipline. The agreement authorized the arbitrator to determine whether "there has been a violation of this Agreement within the allegations set forth in the grievance." The parties bargained for the arbitrator's interpretation of the agreement's "just cause" provision, and the provision does not specify that the same "just cause" is sufficient to justify all types of adverse action.

WM Crittenden next contends that the award must be vacated because the arbitrator instilled his own notions of industrial justice by ordering a penalty other than the sanction specified in the company's Abuse Policy. As a result, the company argues, the arbitrator's award does not draw its essence from the contract. This argument fails for two reasons.

First, the company's Abuse Policy is not part of the collective bargaining agreement. To the contrary, the agreement provides that it is "the sole and entire Agreement between the parties." The Abuse Policy thus did not preclude the arbitrator from deciding whether there was just cause for Brooks's discharge under the agreement or from awarding an appropriate remedy. *See Boehringer Ingelheim Vetmedica, Inc. v. United Food & Com. Workers, Dist. Union Loc. Two*, 739 F.3d 1136, 1141 (8th Cir. 2014); *Trailmobile Trailer*, 223 F.3d at 747-48. WM Crittenden agreed to have the arbitrator decide whether it violated the agreement by terminating Brooks and, if so, what remedy was appropriate for such a violation. The company acknowledged that the arbitrator was authorized to interpret and apply the agreement's "just cause" provision. The company cannot now "complain that the

arbitrator performed the analysis that it requested." *Trailmobile Trailer*, 223 F.3d at 747.

Second, the arbitrator found in any event that Brooks did not violate the Abuse Policy. Even if the Abuse Policy were part of the collective bargaining agreement, therefore, the arbitrator's decision does not conflict with the policy. The arbitrator found that Brooks "engaged in an unprofessional dialogue," but concluded that she did not use "derogatory terms . . . as laid out in" the Abuse Policy's definition of "verbal abuse." By determining that WM Crittenden violated the agreement, and then ordering that Brooks's discharge be reduced to a suspension, the arbitrator was at least arguably construing the contract.

The company's last argument is that the arbitrator's award must be vacated because reinstating Brooks to her former position violates public policy "aimed at protecting vulnerable elderly adults." If a collective bargaining agreement as interpreted by an arbitrator violates explicit public policy, courts are obliged to refrain from enforcing it. *W.R. Grace & Co. v. Loc. Union 759, Int'l Union of United Rubber, Cork, Linoleum & Plastic Workers*, 461 U.S. 757, 766 (1983). Such public policy, however, must be "well defined and dominant," and must be ascertained by reference to laws and not general considerations of the public interest. *Id.* This "narrow" exception focuses not on whether the grievant's behavior "violated well defined and dominant public policy, but on whether the arbitrator's decision to reinstate her would violate public policy." *Boehringer*, 739 F.3d at 1141. Once the public policy question is raised, "we must answer it by taking the facts as found by the arbitrator." *Iowa Elec. Light & Power Co. v. Loc. Union 204 of Int'l Brotherhood of Elec. Workers*, 834 F.2d 1424, 1427 (8th Cir. 1987).

WM Crittenden failed to raise a public policy defense before the arbitrator. That failure "will likely be fatal," because it "prevents the development of a factual record on the issue." *Boehringer*, 739 F.3d at 1142. On appeal, the company cites

-6-

several laws providing evidence of a general public policy against elder abuse. *See* 42 U.S.C. § 1397j(6); Ark. Code Ann. §§ 9-20-102, 12-12-1702; *see also* 42 C.F.R. § 483.12. But the record is insufficient to support a conclusion that the award reinstating Brooks to her former position violates that public policy.

The arbitrator found that Brooks "engaged in an unprofessional dialogue" with a resident, using a "loud and intemperate voice." At the same time, however, the arbitrator found that Brooks did not use "derogatory terms . . . as laid out in" the company's Abuse Policy. The record does not establish that Brooks committed abuse as defined by the cited statutes, or that allowing Brooks to return to work after a suspension violates public policy. In fact, the record developed at arbitration showed that the Arkansas Office of Long Term Care concluded that the allegations of abuse against Brooks were unfounded. On this record, the company has not established that suspending and then reinstating a certified nursing assistant guilty of engaging in "unprofessional dialogue" is contrary to well-defined and dominant public policy. *See Boehringer*, 739 F.3d at 1143.

\* \* \*

For these reasons, the judgment of the district court is affirmed.

_____